**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANTHONY GILMORE, | : | |
| | : | Civil Action No. 06-4953 (NLH) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MICHELLE RICCI, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner <u>pro</u> <u>se</u>
Anthony Gilmore
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625

Counsel for Respondents
Alexis Rebecca Agre
Office of the Prosecutor
Burlington County
New Courts Facility
40 Rancocas Road
Mount Holly, NJ 08060

**HILLMAN**, District Judge

Petitioner Anthony Gilmore, a prisoner currently confined at New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The respondents are Associate Administrator Michelle Ricci and the Attorney General of New Jersey.

For the reasons stated herein, the Petition must be denied.

I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> ...  In the early morning hours of Saturday, June
> 18, 1994, defendant followed Eluria Wensko home.  He
> had mer her earlier at Whisper's Tavern in Browns Mills
> where she was having drinks with several co-workers.
> There, as Wensko approached the bar, defendant offered
> to buy her a drink, which she refused.  Despite her
> objection, defendant paid for her drink and Wensko,
> without any further conversation with defendant
> returned to the table where her friends were sitting.
> Later that evening, Wensko was driven home by a co-
> worker.  Defendant followed in his car.
>
> After Wensko was dropped off outside of her
> apartment complex by her co-worker, defendant called
> her over to his car.  Believing that it was someone
> from the apartment complex, she approached the car and
> recognized defendant from the bar.  Defendant
> immediately reached out and pulled the 4 foot 9 inch,
> 95 pound victim through the open T-bar window by her
> head and began to drive away.  He beat Wensko about the
> head and face and threatened to kill her.  He continued
> to beat her with a closed fist until she lost
> consciousness.  When she regained consciousness, he
> said, "take your clothes off, bitch.  You're going to
> die, bitch, tonight."  She began to take off her
> clothing, thinking that she was going to die.  Because
> she was not undressing the way that he wanted her to
> undress, defendant again beat Wensko into
> unconsciousness.  When she awakened, she found herself
> to be completely naked and on her knees with
> defendant's penis in her mouth.  Dissatisfied with the

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

way that she was performing, defendant beat her into unconsciousness for a third time.  He then kicked her out of the car near some woods, leaving her naked, beaten and barely able to see with an eye almost protruding out of its socket.  Wensko eventually crawled to a nearby house at 420 Lakehurst Road, Pemberton Township, where the occupants wrapped her in a blanket and placed a 911 call.

At 3:20 a.m., Saturday, Juen 18, 1994, one hour and forty minutes before he became aware of the Wensko assault, but within a few minutes after it occurred, Patrolman James Wainmen of the Pemberton Township Police Department noticed an automobile that had been operating in a suspicious manner.  Patrolman Wainmen followed the vehicle, observing "what appeared to be dark clothing fly out of the passenger side window of the vehicle."  Patrolman Wainmen pulled the automobile over.

Patrolman Wainmen and Patrolman William Green, who had arrived on the scene, approached the automobile, which was being driven by defendant.  Defendant stated that he had just dropped off a friend.  The officers saw several articles of women's clothing on the passenger's side floor.  These included black underpants, a black bra, and a black high-heeled shoe. The officers also saw a blue blanket, two one dollar bills ,and some papers with Spanish writing in the back of the vehicle.  Wensko's native language was Spanish.

Defendant denied throwing any clothing out of the window.  Patrolman Green searched the area where the clothing would have landed and found black pantyhose and a multi-colored vest.  At first, defendant claimed that neither item was his.  Subsequently, defendant stated that the pantyhose belonged to his wife. Patrolman Wainmen gave the pantyhose to defendant, but retained the vest.

Defendant admitted that he had been drinking, but did not appear intoxicated.  Defendant was nervous and repeatedly stated that he needed to get home to his wife.  The officers allowed him to leave.  That same morning, at 5:00 a.m., Patrolmen Wainmen and Green responded to the 911 call at 420 Lakehurst Road, and saw Wensko for the first time.  Wensko identified the multi-colored vest obtained from defendant as hers.

3

Patrolman Green went to defendant's residence, but defendant was not at home.  Defendant's vehicle was in the driveway, but the clothing had been removed.  At approximately 6:40 a.m., Patrolman Wainmen returned to the scene of the motor vehicle stop and found Wensko's driver's license and a purse, along with some papers in Spanish.

At approximately 9:30 a.m. that same morning, Sergeant Wayne Comegno and other officers visited defendant's home, after his wife reported that he was there.  Defendant was found hiding under a bed in a rear bedroom.  Sergeant Comegno arrested defendant and read him his <u>Miranda</u> rights.  Defendant then stated that he was at Whisper's Tavern the prior evening.  He had seen a black man and an hispanic woman fighting in the parking lot and he intervened.  Defendant then drove a friend home.  After that, he went to another friend's house and slept there.  When he awoke, his vehicle was missing.  Defendant did not know how the vehicle came to be parked at his residence.

Defendant was taken to the police station where Sergeant Comegno again read defendant his <u>Miranda</u> rights and defendant signed the <u>Miranda</u> form. Defendant denied involvement in the Wensko incident. Defendant also stated that he had a "problem." Defendant refused to talk about the prior evening because if he were to do so, he would be "put ... away for a long time" and he would "lose everything, my wife and family."

During his investigation on June 18, 1994, Sergeant Comegno found a black skirt, a black tube top, black pantyhose, and black underpants on the dirt shoulder of East Lake Shore Road in Browns Mills, four-tenths of a mile from defendant's residence and about one mile from the motor vehicle stop.  The victim identified these items, as well as the items found earlier at the scene of the motor vehicle stop, as hers.

Police showed Wensko a photo array.  She immediately identified defendant as her assailant. Wensko could not identify defendant's vehicle at the police impound lot.  There were blood stains inside defendant's vehicle which were consistent with the victim's blood sample.  Forensic analysis also

disclosed blood under Wensko's fingernails.  Hair
samples recovered from the inside of defendant's
vehicle were comparable to Wensko's hair.  Clothing
fibers found in the car were similar to the fibers from
her underwear and pantyhose.

At trial, defendant testified that he had gone to
Whisper's Tavern at approximately 2:00 a.m. on June 18,
1994.  Defendant's friend asked defendant to drive
Wensko somewhere and defendant agreed to do so.  During
the ride, Wensko asked if defendant had drugs and he
indicated that he did.  Defendant testified that Wensko
offered oral sex in return for the drugs.  Defendant
initially refused, then agreed.  Wensko undressed fully
and began to undo defendant's pants.  Defendant then
changed his mind because of his wife and children.
According to defendant, Wensko responded by punching
defendant in the head, causing him to bleed.  The
vehicle spun around and stopped.  Defendant struck
Wensko several times to prevent her from hitting him
again.  Opening the door and kicking Wensko out of the
car, defendant left her stranded.

(Opinion of Appellate Division, May 19, 1998, at 2-7.)

B.  Procedural History

Pursuant to a jury verdict in the Superior Court of New

Jersey, Burlington County, Trial Division, Petitioner was found

guilty of second-degree aggravated assault, first-degree

kidnapping, first-degree aggravated sexual assault, second-degree

sexual assault, third-degree aggravated criminal sexual contact,

third-degree terroristic threats, and third-degree hindering

apprehension.  On December 6, 1996, the trial court sentenced

Petitioner, (1) on the kidnapping charge, to thirty years'

imprisonment with a fifteen-year period of parole ineligibility,

(2) on the aggravated assault charge, to ten years' imprisonment,

to be served concurrently, (3) on the hindering apprehension

5

charge, to five years' imprisonment, to be served concurrently, and (4) on the aggravated sexual assault charge, to twenty years' imprisonment with a ten-year period of parole ineligibility, to run consecutively to the other terms imposed, and to be served at the Adult Diagnostic and Treatment Center at Avenel.  The remaining counts were merged.  Thus, the aggregate sentence was fifty years' imprisonment with a 25-year period of parole ineligibility.

On May 19, 1998, the Superior Court of New Jersey, Appellate Division, affirmed Petitioner's convictions and sentences. (Ra10.)  On September 11, 1998, the Supreme Court of New Jersey denied certification.  State v. Gilmore, 156 N.J. 408 (1998). Petitioner did not apply to the Supreme Court of the United States for a writ of certiorari.

On or about October 10, 1998, Petitioner filed his first state-court motion for post-conviction relief.  On September 27, 2000, the trial court denied relief.  On November 4, 2002, the Appellate Division affirmed the denial of relief.  (Ra29.)  On March 25, 2003, the Supreme Court of New Jersey denied certification.  State v. Gilmore, 176 N.J. 73 (2003).

Eighty days later, on June 21, 2003, Petitioner filed his second state-court motion for post-conviction relief.  (Ra33.) The trial court denied relief on the grounds that the claims raised in this second petition had been previously adjudicated on

6

Petitioner's direct appeal and first motion for post-conviction relief.  (Ra37.)  On May 23, 2005, the Appellate Division affirmed the denial of relief.  (Ra41.)  On September 12, 2005, the Supreme Court of New Jersey denied certification.  (Ra44.)

Prior to the Supreme Court's denial of certification, Petitioner filed a motion to correct illegal sentence on May 31, 2005.  Petitioner argued that his sentence was unconstitutional and in violation of the rules announced in <u>Blakely v. Washington</u>, 542 U.S. 296 (2004) and <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).  (Ra45.)  On May 18, 2006, the trial court denied the motion on the merits.  (Ra46.)  Petitioner's appeal from the denial of his motion to correct an illegal sentence is pending in the Appellate Division.

This Petition, received by the Clerk on October 17, 2006, is deemed filed on September 7, 2006.  Here, Petitioner asserts the following claims:  (1) ineffective assistance of trial counsel,[2]

---

[2] Petitioner alleges that trial counsel failed to investigate Petitioner's vehicle, failed to investigate the crime scenes, failed to investigate a potential alibi, failed to introduce relevant and exculpatory evidence and statements, failed to call witnesses who would have corroborated Petitioner's version of events, failed to adequately address the admissibility of the statement allegedly made by Petitioner, failed to introduce medical reports indicating a lack of probative physical evidence, failed to make timely objections, and failed to advise defendant as to the potential exposure to consecutive sentences (thus denying Petitioner the chance to accept a plea offer). These are the claims raised in Petitioner's state-court motion for post-conviction relief.

(2) prosecutorial misconduct,[3] (3) the trial court erroneously denied a motion for new trial based on newly-discovered evidence regarding a surveillance system at the apartment complex where the abduction allegedly occurred, (4) the jury verdict was against the weight of the evidence, (5) the trial court imposed a manifestly excessive sentence by the imposition of both maximum terms and consecutive sentences, (6) the trial court imposed an illegal sentence,[4] (7) in connection with his motion for post-conviction relief, the trial court erroneously denied Petitioner's motion to expand the record.

Respondents have answered the Petition and assert that the Petition must be dismissed as time-barred and as a mixed petition containing both exhausted and unexhausted claims.  Alternatively, Respondents contend that the Petition is meritless.

---

[3] Specifically, Petitioner alleges that the prosecutor improperly cross-examined Petitioner on his post-arrest silence, improperly introduced evidence of past crimes to the grand jury, knowingly misrepresented evidence in his opening statement, knowingly introduced false evidence about forensic evidence (hairs and fingerprints), and refused during the post-conviction relief proceedings to provide Petitioner evidence about fingerprints found at the crime scenes.

[4] This is the claim that the sentences violate the rules announced by the Supreme Court in Blakely v. Washington, 542 U.S. 296 (2004), and Apprendi v. New Jersey, 530 U.S. 466 (2000).

II.   28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty
Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent
part:

> (a) The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of
> the United States.
>
> (b)(1) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted unless it appears
> that—
>
>      (A) the applicant has exhausted the remedies
> available in the courts of the State; ...
>
>      (2) An application for a writ of habeas corpus may
> be denied on the merits, notwithstanding the failure of
> the applicant to exhaust the remedies available in the
> courts of the State.

A.   Timeliness

The limitations period for a § 2254 habeas petition is set
forth in 28 U.S.C. § 2244(d),[5] which provides in pertinent part:

> (1) A 1-year period of limitations shall apply to an
> application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of—

---

[5] The limitations period is applied on a claim-by-claim
basis.  See Fielder v. Verner, 379 F.3d 113 (3d Cir. 2004), cert.
denied, 543 U.S. 1067 (2005); Sweger v. Chesney, 294 F.3d 506 (3d
Cir. 2002).

9

(A) the date on which the judgment became final by
the conclusion of direct review or the expiration of
the time for seeking such review;

(B) the date on which the impediment to filing an
application created by State action in violation of the
Constitution or laws of the United States is removed,
if the applicant was prevented from filing by such
State action;

(C) the date on which the constitutional right
asserted was initially recognized by the Supreme Court,
if the right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on
collateral review; or

(D) the date on which the factual predicate of the
claim or claims presented could have been discovered
through the exercise of due diligence.

Petitioner does not allege, and this Court cannot discern,
any facts triggering the application of § 2244(d)(1)(B), (C), or
(D).[6]  Thus, evaluation of the timeliness of this § 2254 petition
requires a determination of, first, when the pertinent judgment
became "final," and, second, the period of time during which an
application for state post-conviction relief was "properly filed"
and "pending."

A state-court criminal judgment becomes "final" within the
meaning of § 2244(d)(1) by the conclusion of direct review or by
the expiration of time for seeking such review, including the 90-

---

[6] Although Petitioner's <u>Blakely</u>/<u>Apprendi</u> claim relies on
caselaw that postdates Petitioner's conviction, neither the
Supreme Court nor the Court of Appeals for the Third Circuit has
held that the holdings of those cases should be applied
retroactively to cases on collateral review.  <u>See</u>, <u>U.S. v.
Swinton</u>, 333 F.3d 481 (3d Cir.), <u>cert. denied</u>, 540 U.S. 977
(2003).  Thus, subsection (C) does not apply to that claim.

day period for filing a petition for writ of certiorari in the United States Supreme Court.  See Swartz v. Meyers, 204 F.3d 417, 419 (3d Cir. 2000); Morris v. Horn, 187 F.3d 333, 337 n.1 (3d Cir. 1999); U.S. Sup. Ct. R. 13.  Petitioner's conviction became final on December 10, 1998, ninety days after the Supreme Court of New Jersey denied certification on September 11, 1998.

The limitations provision of § 2244(d) also provides for statutory tolling.

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this section.

28 U.S.C. § 2244(d)(2).

To statutorily toll the limitations period, a state petition for post-conviction relief must be "properly filed."

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by the appropriate court officer for placement into the official record.  And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings.  These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee.  In some jurisdictions the filing requirements also include, for example, preconditions imposed on particular abusive filers, or on all filers generally.  But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar.

<u>Artuz v. Bennett</u>, 531 U.S. 4, 8-9 (2000) (citations and footnote omitted) (finding that a petition was not "[im]properly filed" merely because it presented claims that were procedurally barred under New York law on the grounds that they were previously determined on the merits upon an appeal from the judgment of conviction or that they could have been raised on direct appeal but were not).

Where a state court has rejected a petition for post-conviction relief as untimely, however, it was not "properly filed" and the petitioner is not entitled to statutory tolling under § 2244(d)(2).  <u>Pace v. Diguglielmo</u>, 544 U.S. 408 (2005). This is so even where, in the alternative, the state court addresses the merits of the petition in addition to finding it untimely.  <u>Carey v. Saffold</u>, 536 U.S. 214, 225-26 (2002).

An application for state post-conviction relief is considered "pending" within the meaning of § 2244(d)(2), and the limitations period is statutorily tolled from the time it is "properly filed," during the period between a lower state court's decision and the filing of a notice of appeal to a higher court, <u>Carey v. Saffold</u>, 536 U.S. 214 (2002), and through the time in which an appeal could be filed, even if the appeal is never filed, <u>Swartz v. Meyers</u>, 204 F.3d at 420-24.  However, "the time during which a state prisoner may file a petition for writ of certiorari in the United States Supreme Court from the denial of

his state post-conviction petition does not toll the one year statute of limitations under 28 U.S.C. § 2244(d)(2)." Stokes v. District Attorney of the County of Philadelphia, 247 F.3d 539, 542 (3d Cir.), cert. denied, 534 U.S. 959 (2001).

Here, Petitioner properly filed his first state motion for post-conviction relief on October 10, 1998, before his conviction became final.  Thus, no time elapsed prior to the filing of the first PCR motion.  That first PCR motion was pending until March 25, 2003, when the Supreme Court of New Jersey denied certification.

Eighty days elapsed before Petitioner filed his second state PCR motion on June 21, 2003.  The Appellate Division affirmed the denial of relief on the grounds that the claims asserted were procedurally barred either because they were raised and decided previously or because they could have been raised in Petitioner's direct appeal or first PCR motion.  The denial of relief because of a procedural bar does not render the second PCR motion improperly filed.  Thus, it was a properly-filed motion which tolls the limitations period so long as the motion remains pending.  That second PCR motion was pending until September 12, 2005, when the Supreme Court of New Jersey denied certification.

On May 31, 2005, prior to the denial of certification with respect to Petitioner's second state PCR motion, he filed a petition to correct an illegal sentence.  Under New Jersey law, a

13

petition to correct an illegal sentence may be filed "at any time." N.J.Ct.R. 3:22-12(a).  In addition, the petition was denied on the merits.  (Ra46, Ra48.)  Accordingly, it appears that the petition to correct an illegal sentence was a properly-filed application for state post-conviction or other collateral review, sufficient to toll the limitations period, which remains pending.  Cf. Hartman v. Carroll, 492 F.3d 478 (3d Cir. 2007) (post-conviction plea for leniency, which does not depend upon the existence of a legal defect, does not toll the limitations period).  As a result, only 80 days of the limitations period have elapsed.  This Petition is not time-barred.

B.    Exhaustion of State Court Remedies

A state prisoner applying for a writ of habeas corpus in federal court must first "exhaust[] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ... ."  28 U.S.C. § 2254(b)(1).  See also Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

14

A petitioner exhausts state remedies by presenting his
federal constitutional claims to each level of the state courts
empowered to hear those claims, either on direct appeal or in
collateral post-conviction proceedings.  See, e.g., O'Sullivan v.
Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners
[in order to fully exhaust their claims] to file petitions for
discretionary review when that review is part of the ordinary
appellate review procedure in the State"); Lambert v. Blackwell,
134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state
court is not required if the petitioner's claim has been
considered on direct appeal); 28 U.S.C. § 2254(c) ("An applicant
shall not be deemed to have exhausted the remedies available in
the courts of the State, within the meaning of this section, if
he has the right under the law of the State to raise, by any
available procedure, the question presented.")  Once a
petitioner's federal claims have been fairly presented to the
state's highest court, the exhaustion requirement is satisfied.
Castille v. Peoples, 489 U.S. 346, 350 (1989); Picard v. Connor,
404 U.S. 270, 275 (1971).

The petitioner generally bears the burden to prove all facts
establishing exhaustion.  Toulson v. Beyer, 987 F.2d 984, 987 (3d
Cir. 1993).  This means that the claims heard by the state courts
must be the "substantial equivalent" of the claims asserted in
the federal habeas petition.  Picard, 404 U.S. at 275.  Reliance

15

on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same.  Id. at 277.

Exhaustion is not, however, a jurisdictional requirement; rather, it is designed to allow state courts the first opportunity to pass upon federal constitutional claims, in furtherance of the policies of comity and federalism.  Granberry v. Greer, 481 U.S. 129, 131, 134-35 (1987); Rose, 455 U.S. at 516-18.  Exhaustion also has the practical effect of permitting development of a complete factual record in state court, to aid the federal courts in their review.  Rose, 455 U.S. at 519.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims."  Toulson, 987 F.2d at 987.  In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused."  Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir.), cert. denied, 484 U.S. 946 (1987).  However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are

16

appropriate." <u>Id.</u> at 186.  "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." <u>Id.</u> at 187.

Even where exhaustion is excused, the doctrine of procedural default may come into play.

> A procedural default occurs when a prisoner's federal claim is barred from consideration in the state courts by an "independent and adequate" state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Doctor[ v. Walters</u>, 96 F.3d 675, 683 (3d Cir. 1996)].  Federal courts may not consider the merits of a procedurally defaulted claim unless the applicant establishes "cause" to excuse the default and actual "prejudice" as a result of the alleged violation of the federal law or unless the applicant demonstrates that failure to consider the claim will result in a fundamental "miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

<u>Carpenter v. Vaughn</u>, 296 F.3d 138, 146 (3d Cir. 2002).

Alternatively, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).

Respondents contend that Petitioner has failed to exhaust certain claims and that this Petition is a mixed petition that must be dismissed.  <u>See</u>, <u>e.g.</u>, <u>Rose v. Lundy</u>, 455 U.S. 509 (1982), (mixed petitions must be dismissed), <u>abrogated by</u> <u>Rhines v. Weber</u>, 544 U.S. 269 (2005) (under limited circumstances,

district court may stay mixed federal habeas petition pending exhaustion of unexhausted claims).  Specifically, Respondents contend that the following claims are not exhausted: (1) prosecutorial misconduct before the grand jury, (2) prosecutorial misconduct during the opening statement, (3) prosecutorial misconduct in the form of introduction of false evidence during the trial, (4) prosecutorial misconduct in the failure to provide fingerprint evidence during the post-conviction relief proceedings, (5) the jury's verdicts (on the charges of kidnapping, aggravated sexual assault, sexual assault, and aggravated criminal sexual contact) were against the weight of the evidence, (6) the Appellate Division's denial of Petitioner's motion to expand the record, and (7) the sentence is in violation of <u>Blakely</u> and <u>Apprendi</u>.  Because these claims are patently meritless, however, as discussed more fully <u>infra</u>, this Court will exercise its discretion to deny these claims, notwithstanding the failure of Petitioner to exhaust his state remedies.  <u>See</u>, <u>Rhines v. Weber</u>, 544 U.S. at 277; 28 U.S.C. § 2254(b)(2).

### III.  <u>ANALYSIS</u>

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

18

established Federal law, as determined by the Supreme
Court of the United States; or

    (2) resulted in a decision that was based on an
unreasonable determination of the facts in light of the
evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court
precedent "if the state court applies a rule that contradicts the
governing law set forth in [Supreme Court] cases," or "if the
state court confronts a set of facts that are materially
indistinguishable from a decision of th[e] Court and nevertheless
arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case," and may involve an
"unreasonable application" of federal law "if the state court
either unreasonably extends a legal principle from [the Supreme
Court's] precedent to a new context where it should not apply or
unreasonably refuses to extend that principle to a new context
where it should apply," (although the Supreme Court expressly
declined to decide the latter).  Id. at 407-09.  To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.

19

Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent."  Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

A.   <u>Ineffective Assistance of Trial Counsel</u>

Petitioner alleges that trial counsel failed to investigate Petitioner's vehicle, failed to investigate the crime scenes, failed to investigate a potential alibi, failed to introduce relevant and exculpatory evidence and statements, failed to call witnesses who would have corroborated Petitioner's version of events, failed to adequately address the admissibility of the statement allegedly made by Petitioner, failed to introduce medical reports indicating a lack of probative physical evidence (specifically, that the victim's body did not reveal bruises that would have been expected if she had been pulled into the car as she described), failed to make timely objections, and failed to advise defendant as to the potential exposure to consecutive sentences (thus denying Petitioner the chance to accept a plea offer).

On Petitioner's first state PCR petition, the trial court painstakingly rejected, without an evidentiary hearing, each aspect of the ineffective-assistance-of-counsel claim.

> I will deny the defendant's application for post-conviction relief, and I will deny the defendant's application for an evidentiary hearing on those issues that might lend themselves to an evidentiary hearing, and here are the reasons: ...
>
> ... Under <u>Strickland against Washington</u>, in order to have a viable claim for ineffective assistance of counsel, two things have to be shown at the same time or in combination; and, that is, one, that the standard of performance of trial counsel either before trial and/or during trial fell below that standard expected

21

of an expert in criminal law.  The standard is not what would a real estate or divorce lawyer do?  The standard is what would a criminal trial lawyer do?  And the mere fact that someone may not have done the best possible job that the best lawyer in the world might have done or everything that someone who had unlimited resources would have done is not the measure.  The measure is what would an ordinary expert in criminal law do or have done?

And the second thing that has to be present is, in addition to that, if it were shown a showing that the result would clearly have been different if those things had been done.  There are a lot of things which someone might do, but are, nevertheless, so whats?  Now, there are 11 things that are set forth as claim that were acts of omission.  And none of them is supported by sufficient information or are of such moment that it could be said that trial counsel as inadequate by the standard provided or that it would -- and that it would have changed the result.

First, the defendant argues he received ineffective assistance of counsel because his trial counsel failed to personally investigate the vehicle at the impoundment lot, and the defendant posits the argument that had counsel done so it could have shown that he was -- it was physically impossible for the defendant to have reached over across the car and pulled the victim inside.  There are not specific facts to support that allegation that the defendant -- that the counsel did not adequately investigate the car.  It is not support with any affidavits or certifications in support of that contention, other than the wife's affidavit which says that she doesn't believe that counsel investigated.

And under State against Cummings, 321 N.J. Super. 170, the defendant must do more than make bald assertions but must allege sufficient facts.

It is questionable whether defense counsel's performance in this regard was deficient.  However, the lack of such an investigation did not prejudice the defendant where the defendant had access to photographs which clearly showed the structure of the vehicle and the removable pop windows.

Number 2, the defendant asserts that counsel did not conduct an investigation of the crime scene, and it's the defendant's position that had counsel discovered the surveillance system, that counsel could then have presented evidence to support the defendant at trial or at its motion for a new trial.

Again, the defendant does not provide any specific facts to support the allegation that counsel -- his investigators did not personally investigate the apartment complex where the abduction occurred.  He has not supported his assertion with affidavits or certifications to support the contention.  <u>Cummings</u>: Must do more than bald assertions.  Must allege sufficient facts.

Furthermore, the surveillance system that the defendant refers to is not readily apparent, and based on references in the record would not have been helpful to defendant's case had it been discovered prior to trial.  Once the surveillance system was discovered after trial, defense counsel did investigate after trial and used a certification from this investigator to support the motion for a new trial.

The surveillance system, the defendant refers to hin his brief, consists of a camera or two on the roof of the apartment complex, and it's the State's contention that the surveillance system is designated for the laundry facility area only where there had been a previous problem with thefts and that this would not be near the area where the abduction took place.

And the investigator learned that the system was in operation the night of the incident and there was no tape in existence because it rewound every day.  And that is in the record specifically at Transcript 2/25, 6T6-14 to 23, 6T9-5 -- 6T9-5 to 12, 6T10-2 to 10-4.

The defendant cannot show prejudice where he cannot offer proof that this surveillance system actually views the abduction site, and if it does provide evidence that someone even reviewed the tape before it was rewound.  In any event, it would appear that based on the review of the record that the tape -- that the trial court was correct in ruling that this evidence was immaterial in denying the defendant's motion for a new trial.

23

Number 3, the defendant argues that counsel provided ineffective assistance investigating the time frame of the incident in relation to the alibi defense. The gist of the defendant's argument is that if counsel had timed his route, it would have demonstrated that it was impossible for him to have traveled to Miss Wensko's apartment and abducted her.

The defendant's proofs do not support his allegation that counsel did not investigate this as a possibility, and to the contrary, in defendant's brief and his wife's affidavit, it is noted that counsel did partially trace and time defendant's route.

It is also stated in his affidavit that defense counsel indicated he would complete the timing of defendant's route.  Defendant does not offer proof that this was not completed.

Additionally, defendant does not offer any formal showing that the alleged time frame would have proven his version of the events and that it would have been impossible for him to abduct Miss Wensko.  The defendant has not supported his assertion with affidavits or certifications to support the contention, and more than bald assertions are required.

Number 4, the defendant argues that counsel provided ineffective assistance regarding fingerprint evidence from the defendant's vehicle.  Specifically, the defendant argues that counsel failed to object to perjured testimony regarding this evidence and that counsel should have had this evidence analyzed to determine whether the fingerprints matched the victims.

As discussed above in the claims of prosecutorial misconduct, any reference made to fingerprint evidence in the trial was not false or perjured testimony.

The defendant also fails to offer any proof that the fingerprints were not analyzed by defense counsel, and based on a review of the record, it would appear, however, that no analysis would have made a difference.

However, considering that there was overwhelming physical evidence presented to the jury, [blonde] hair fibers recovered during processing of the defendant's vehicle which matched samples taken from the victim,

that the victim was in the defendant's vehicle.  And,
therefore, the argument that the absence, the presence
or the location of fingerprints would have been
dispositive or probative of whether this was a
voluntary entrance into the vehicle or a forced entry
has no convincing force.

Number 5, the defendant argues that counsel
provided ineffective assistance regarding medical
evidence.  Specifically, that counsel failed to
introduce medical reports or call a medical witness to
testify regarding victim's examination, the lack of a
rape kit used, statements made by the victim regarding
loss of consciousness and the evidence of head
injuries.

The defendant argues that this evidence and
testimony would have refuted the claim of sexual
assault.  Defense counsel, in all likelihood, did not
introduce such evidence or offer this type of testimony
because it would have been incredibly damaging to the
defendant's case.  So that was a tactical trial
decision that was made, and a tactical trial decision
which may not contribute to a favorable result does not
necessarily equate to ineffective assistance of
counsel.

The medical reports show that severe trauma to the
head, face and body took place.  The reason the rape
kit was not used is because the victim was not
vaginally assaulted.  Rape was never -- in the vaginal
intercourse sense -- was never alleged by the State or
the victim.  Instead, the assault does not include
vaginal or anal penetration.

Number 6, the defendant argues that counsel
provided ineffective assistance regarding prior
statements made by the victim.  Specifically, the
defendant argues that counsel did not cross-examine the
victim on prior statements relation to her being pulled
into the car, how her clothing was removed and fellatio
she was forced to perform upon the defendant.

Counsel, it can reasonably be inferred, did not
cross-examine on these statements because they are
consistent with her trial testimony.  Instead, counsel
did cross-examine the victim on statements she made to
paramedics that she left the bar with defendant that

were inconsistent with her trial testimony.  So the
defendant fails to show ineffective assistance of
counsel regarding cross-examination of the victim's
statements.

Number 7, the defendant argues that counsel
provided ineffective assistance because he did not call
certain witnesses on behalf of defendant's -- on
defendant's behalf.  The defendant argues that by not
calling Lisa Mee, Clarence Dawson, Meir Uziyahu, Dr.
Greenman and Ken Scales that counsel did not have a
sound defense strategy, and thus, defendant was
prejudiced.

A review of the statements made by these potential
witnesses, however, shows that their potential
testimony would have been adverse, not favorable to the
defendant.  In all likelihood, counsel made a tactical
decision not to call these particular witnesses ... who
are cited by the defendant.

Number 8, the defendant argues that counsel
provided ineffective assistance regarding challenging
the admissibility of statements made by the defendant
to police on June 18, 1994.  Counsel did not challenge
these statements as coerced and inaccurate.

Defendant did testify at trial that he made these
statements.  However, defendant now contends that
counsel should have attacked the statements as having
never been made.

A review of the record shows that counsel's
performance was not deficient in challenging these
statements.  Counsel made a tactical decision to attack
the statements on the ground that they were coerced and
involuntary.  Notably, defense counsel did elicit
favorable testimony on cross-examination about
defendant's fatigue, the fact that he was under
interrogation and that the statements were not taped or
signed by the defendant.

The defendant does not offer any evidence to
contradict the trial court's ruling that the statements
were voluntary and admissible other than make an
assertion.  The defendant has not submitted affidavits
or certifications to support his contentions as
required by Cummings, 321 Super.  So there is not a

26

demonstration of ineffective assistance of counsel
regarding challenging the admissibility of statements
he gave to the police.

Number 9, the defendant argues that counsel
provided ineffective assistance regarding a lack of
certain physical evidence found in defendant's vehicle.
Specifically, there were no pubic hairs recovered.

Counsel's performance was not deficient in this
regard because the lack of pubic hair does not
necessarily refute that a sexual assault took place.
Moreover, it is not clear from the record whether any
of these hairs recovered were, in fact, pubic hairs.
There was significant testimony and physical evidence
indicating that a sexual assault did occur and a lack
of pubic hairs would not create doubt in this
particular case.  Thus, defendant fails to demonstrate
ineffective assistance of counsel because he cannot
demonstrate that he was prejudiced by a lack of pubic
hair evidence.

Number 10, defendant argues that counsel provided
ineffective assistance regarding objections at trial.
Specifically, that counsel failed to object to severing
the assault charge with the remaining charges, that
counsel failed to object to false or perjured testimony
about T-tops, hair and fingerprints, and that counsel
failed to object to a juror taking notes.

In the first instance, the State was required to
join the assault charges with the other charges as they
arose with the other episode, Rule 3:15-1(b), and thus,
counsel would have no basis to object.

Second, counsel had no reason to object to
evidence on the grounds that it was false evidence
when, in fact, such evidence was not false or not
clearly false or not shown to be false.  This has
already been discussed previously.

And, third, jurors were specifically instructed
not to take notes during the trial, and any notes taken
at home could not be brought to the deliberations.
Defendant does not offer any proof that a juror
disregarded these instructions and if there was, in
fact, no violation, counsel would have no basis to

object.  Thus, the defendant has failed to demonstrate
ineffective assistance regarding objections at trial.

        And, Number 11, the defendant argues that counsel
provided ineffective assistance regarding plea offers.
Specifically, defendant asserts that counsel failed to
obtain more time for defendant to make a decision
regarding an eleventh hour offer and that counsel
failed to accurately advise defendant of his potential
exposure at sentencing.

        Defendant cannot claim ineffective assistance of
counsel regarding not having more time to deliberate
over a plea bargain that came to his attention promptly
by his attorney.  The State set the deadline for
accepting any plea that was offered.

        The defendant also fails to offer any proof that he
was not correctly advised of his potential maximum
sentence other than the general assertion in his brief.
He has not supported the assertions with affidavits or
certifications to support these contentions as required
by <u>Cummins</u>, 221 N.J. Super. 170.

        Based on that detailed explanation of how there is
a failure of showing of ineffective assistance of
counsel, either by not doing what a reasonable
competent lawyer would do and not showing how it would
have made a difference, there is no basis to grant
post-conviction relief on those basis claimed, and
there is not under <u>Preciose</u> an adequate showing to even
have an evidentiary hearing.

(PCR transcript, Aug. 18, 2000, at 27-40.)  On appeal, the

Appellate Division affirmed "substantially for the reasons set

forth in Judge Friedman's comprehensive oral opinion of August

18, 2000."  (Appellate Division Opinion, Nov. 4, 2002, at 10.)

The Appellate Division also held that Petitioner had failed to

make out a prima facie showing of ineffective assistance of

counsel that would have entitled him to an evidentiary hearing.

28

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." <u>Id.</u> at 697.

29

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Careful review of the record reveals that the decision of the Appellate Division is neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Moreover, the affidavits that Petitioner submitted in connection with the motion to expand the record, which the Appellate Division denied, do nothing to undermine the correctness of the Appellate Division result.

Petitioner's allegation of ineffective assistance of counsel during the plea negotiations merits separate mention.  In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that the

30

<u>Strickland</u> test applies to advice given by counsel in the context of guilty plea discussions.  Although the standard for deficient performance remains unchanged in the context of the plea process, the prejudice prong "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  <u>Id.</u>  Thus, a prisoner may establish prejudice by demonstrating that he likely would have received a lower sentence by pleading guilty rather than proceeding to trial, <u>see</u> <u>U.S. v. Booth</u>, 432 F.3d 542, 546-47 (3d Cir. 2005), or that there is a "'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial,'" <u>Weeks v. Snyder</u>, 219 F.3d 245, 257 (3d Cir.) (quoting <u>Hill</u>, 474 U.S. at 59), <u>cert. denied</u>, 531 U.S. 1003 (2000).

Petitioner contends that his trial counsel never advised him of his maximum sentencing exposure during plea negotiations, that he understood his maximum exposure to be thirty years with a 15-year parole disqualifier, and that he would have accepted an offer of 20 years with a 10-year parole disqualifier if he had been advised of his maximum exposure.  In support of this contention, Petitioner submitted to the PCR court a statement from his wife stating that (a) in nine out of ten pre-trial meetings between Petitioner, his wife, and defense counsel, defense counsel kept advising of plea offers, and (b) at sentencing, defense counsel expressed to Petitioner his surprise

at the length of the sentence, stating "Wow, that's a lot of time
- I didn't think you were going to get so much time!"  Petitioner
also submitted a recitation of the plea discussion that occurred
the Friday before trial began, which began with Petitioner
rejecting an offer of 30 years with a 15-year parole disqualifier
because that was the same "deal" the prosecutor had been
offering, then rejecting an offer of 20 years with a 10-year
parole disqualifier, because "that still is the same deal," then
Petitioner asked for a 364-day sentence, for simple assault,
finally rejecting an offer of a seven-year sentence.
(Petitioner's Brief in Support of PCR motion, at 49-51.)

    Petitioner's own evidence that he rejected an offer of 30
years imprisonment with a 15-year parole disqualifier belies his
argument here that he did not know that he was facing a sentence
potentially in excess of that amount.  Nowhere in the record or
before this Court does Petitioner suggest that he rejected the
30-year offer that opened negotiations the Friday before trial
because it was his maximum exposure.  To the contrary, the clear
implication of Petitioner's own recitation of those negotiations
is that he understood that his maximum exposure was greater than
the 30-year offer made by the prosecutor.  Moreover, the evidence
that he rejected offers of 20-years and then 7-years, ultimately
proposing a 364-day sentence for simple assault, reinforces the
conclusion that he would not have accepted any proposed

negotiated sentence for a term of years.  Finally, his wife's statement, that defense counsel talked about plea offers in nine out of ten pre-trial meetings, omits any statement regarding counsel's advice on those occasions, or lack thereof, regarding Petitioner's potential maximum sentencing exposure.  Despite the advice to Petitioner by the PCR court and Appellate Division that the simple assertion, years after the fact, that counsel failed to advise Petitioner of his maximum exposure, he has not brought any further factual evidence in support of that position to the Appellate Division or to this Court.  Under the circumstances, this Court finds that the decision of the Appellate Division with respect to this claim is neither contrary to nor an unreasonable application of, clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.  Petitioner is not entitled to relief on this claim.

B.   Prosecutorial Misconduct

Petitioner alleges that the prosecutor improperly cross-examined Petitioner on his post-arrest silence, improperly introduced evidence of past crimes to the grand jury,[7] knowingly

---

[7]   The Fifth Amendment right to a grand jury presentation in felony cases is not applicable to the states.  Alexander v. Louisiana, 405 U.S. 625, 633 (1972).  Thus, any claim of defect in a state grand jury proceeding is a claim of a state-law error that does not raise federal constitutional concerns unless it rises to the level of a due process deprivation.  See Estelle v. McGuire, 502 U.S. 62, 68 (1991).  Cf. U.S. v. Console, 13 F.3d

misrepresented evidence in his opening statement and knowingly

introduced false evidence about forensic evidence (hairs and

fingerprints and the alleged T-top on Petitioner's car), and

refused (during post-conviction proceedings) to provide

Petitioner evidence about fingerprints found at the crime

scenes.[8]

---

641, 671-72 (3d Cir. 1993) (with the exception of a claim of
racial discrimination in the selection of grand jurors, a petit
jury's guilty verdict renders harmless any prosecutorial
misconduct before the indicting grand jury) (citing Vasquez v.
Hillery, 474 U.S. 254 (1986)).  Where any error in a state grand
jury proceeding is rendered harmless by a subsequent petit jury
verdict, there is no due process deprivation.  See, e.g., Lopez
v. Riley, 865 F.2d 30, 32 (2d Cir. 1989); United States v.
Mechanik, 475 U.S. 66, 72-73 (1986) (involving a violation of
Fed.R.Crim.P. 6(d)).

     Here, the petit jury found Petitioner guilty of the crimes
charged beyond a reasonable doubt, rendering harmless any error
in the state grand jury proceedings.  Petitioner is not entitled
to relief on this claim.

     [8] Errors in state post-conviction relief proceedings are
collateral to the conviction and sentence and do not give rise to
a claim for federal habeas relief.  See, e.g., Hassine v.
Zimmerman, 160 F.3d 941, 954 (3d Cir.1998), cert. denied, 526
U.S. 1065 (1999) ("The federal role in reviewing an application
for habeas corpus is limited to evaluating what occurred in the
state or federal proceedings that actually led to the
petitioner's conviction; what occurred in the petitioner's
collateral proceeding does not enter into the habeas
calculation.... Federal habeas power is 'limited ... to a
determination of whether there has been an improper detention by
virtue of the state court judgment."); Ferguson v. State, 1996 WL
1056727 (D.Del. 1996) and cases cited therein.  There is no
dispute that trial counsel was made aware of the existence of the
fingerprints before trial; this claim is solely that the
prosecutor delayed delivering the fingerprint evidence when it
was requested in connection with post-conviction relief
proceedings.  Accordingly, Petitioner is not entitled to relief
based upon any prosecutorial misconduct in connection with his

On direct appeal, the Appellate Division rejected Petitioner's claim of prosecutorial misconduct based on the cross-examination.

> In Point I, defendant contends that cross-examination based on his post-arrest statement to the police violated his right to remain silent and was therefore improperly admitted. <u>State v. Deatore</u>, 70 N.J. 100, 108 (1976) precludes the State from using the defendant's post-arrest silence to impeach defendant's exculpatory story told at trial. <u>Deatore</u>, however, does not prohibit the prosecutor from impeaching a defendant's exculpatory trial story with inconsistent statements made by defendant at the time of his arrest. Defendant told the police when arrested that he intervened in a fight between a black man and an hispanic woman, that he drove a friend home and slept at another friend's house, and that his car was taken without his permission and later parked at his residence. Here, the prosecutor was not constitutionally prohibited from cross-examining defendant based on what he told the police after arrest and the totally different trial version of consensual sex with and assault by the victim. <u>See</u> <u>State v. Marks</u>, 201 N.J. Super. 514, 531 (App. Div. 1985) (allowing cross-examination of statements of surprise after arrest), <u>certif. denied</u>, 102 N.J. 393 (1986).

(Opinion of Appellate Division at 8-9.)

Petitioner raised in his first PCR petition his claims of prosecutorial misconduct in the form of impropriety in the presentation of evidence and argument regarding hairs and fingerprints found in or on the car and the characterization of the car as a "T-top." The trial court, in denying relief, did not specifically address these allegations, except to state, in the discussion of alleged ineffective assistance of counsel, that

---

post-conviction relief proceedings.

"any reference made to fingerprint evidence in the trial was not false or perjured testimony." (Transcript of PCR argument, August 18, 2000, at 33.) Petitioner did not pursue this claim of prosecutorial misconduct on appeal. It is, therefore, unexhausted.

The U.S. Supreme Court has recognized the obligation of a prosecutor to conduct a criminal prosecution with propriety and fairness.

> He may prosecute with earnestness and vigor – indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one. ... Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Berger v. United States, 295 U.S. 78, 88 (1935). "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone. Prosecutors sometime breach their duty to refrain from overzealous conduct by commenting on the defendant's guilt and offering unsolicited personal views on the evidence." United States v. Young, 470 U.S. 1, 7 (1985).

Under U.S. Supreme Court precedent, where a prosecutor's opening or closing remarks are challenged in habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477

U.S. 168, 181 (1986) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637 (1974)).  Thus, "Supreme Court precedent counsels that the reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant."  <u>Moore v. Morton</u>, 255 F.3d 95, 107 (3d Cir. 2001).

Certainly, there is no prosecutorial misconduct based upon the hair and fingerprint evidence or the vehicle description.  An expert testified that the hairs recovered from the vehicle were a match to the victim's hairs obtained within days of the incident.  The prosecutor accurately stated that fingerprints were lifted from Petitioner's vehicle.  Petitioner's counsel had access to the fingerprint evidence prior to trial.  In any event, Petitioner admitted that the victim was inside his car, and that there was a physical altercation, so the presence or absence of the victim's hairs in Petitioner's vehicle was not probative of Petitioner's guilt.  Similarly, whether the opening in the roof of Petitioner's vehicle could be more accurately described as a "T-top" or moonroof or sunroof, it is admitted by Petitioner that there was an opening in the top of his vehicle and photos of the vehicle were introduced into evidence and shown to the jurors, for their evaluation of the allegation that the victim was pulled into the vehicle through either the window or the roof.

37

Accordingly, Petitioner cannot establish that the prosecutor's remarks or presentation of evidence deprived him of a fair trial. Petitioner is not entitled to relief on this claim.

C.   Denial of Motion for New Trial

Plaintiff contends that the trial court deprived him of his Fifth, Sixth, and Fourteenth Amendment rights when it denied his motion for a new trial based upon newly-discovered evidence of a surveillance system at the victim's apartment complex.  This Court construes this as a claim that the denial of the motion for new trial violated Petitioner's constitutional right to due process.

The Appellate Division rejected this claim on direct appeal.

In Point II, defendant contends that the trial judge erroneously denied a motion for a new trial on newly discovered evidence consisting of a tape from the surveillance camera in the victim's apartment complex which could have scanned the area where the kidnapping took place.  To succeed on this motion, defendant was required to show that the new evidence was material to the issue, discovered since trial, not discoverable by reasonable diligence beforehand and of the sort that would probably change the jury's verdict if a new trial was granted.  State v. Carter, 91 N.J. 86, 121 (1982). As correctly found by the judge, defendant did not meet any of these requirements.

First, defendant did not show that the surveillance camera scanned the area where the kidnapping took place.  In fact, the surveillance was thought to be of the building's laundry room area which had been the target of vandalism and not the curbside area outside of the building from which the victim was abducted.  Without knowing the area covered by the surveillance, the trial judge was in no position to find that the tpae, if it ever existed, was material.

38

      Second, defendant cannot produce the tape.
Defendant merely proffered an inference that if the
tape showed someone being kidnapped, it would have been
noticed and brought to the attention of the police.
The basis for drawing such an inference was purely
speculative and fatally flawed.  Defendant assumes that
the surveillance camera scanned the location where the
kidnapping occurred, was monitored at the time and that
the tape was retained.  Defendant did not establish any
of these prerequisites.

      Third, the evidence was discoverable before trial
because photos of the scene at the apartment complex
clearly depicted the camera raised some distance in the
air.  The fact that defendant did not address this
issue before trial shows a lack of diligence.

      Fourth, there is nothing to suggest that the trial
result would have been different under the
circumstances presented.

(Opinion of Appellate Division at 9-10.)

     The Supreme Court has made it clear that the right to due

process of law does not require a state court to consider newly

discovered evidence proffered after trial if the trial itself was

constitutionally adequate.  Herrera v. Collins, 506 U.S. 390,

400, 411 (1992) ("Claims of actual innocence based upon newly

discovered evidence have never been held to state a ground for

federal habeas relief absent an independent constitutional

violation occurring in the underlying state criminal

proceeding.").  Concurring in Herrera, Justices Scalia and Thomas

emphasized their belief that "[t]here is no basis in text,

tradition, or even in contemporary practice ... for finding ... a

[constitutional] right to demand judicial consideration of newly

discovered evidence of innocence brought forward after
conviction."  506 U.S. at 427-28.

Here, Petitioner's trial was constitutionally adequate.
Petitioner suffered no constitutional deprivation by the denial
of his motion for new trial.  Even assuming, for the sake of
argument, a right to new trial based upon "a truly persuasive
demonstration of 'actual innocence,'" 506 U.S. at 417,
Petitioner's argument falls far short of the threshold.  The new
evidence of a surveillance system at the apartment complex fails
to demonstrate that the area surveilled includes the area where
the abduction allegedly occurred, that the surveillance system
was operational on the night in question, that any surveillance
tape was made or reviewed.  Petitioner is not entitled to relief
on this claim.

D.   Verdict Against the Weight of the Evidence

Petitioner contends that the verdicts as to kidnapping,[9]
aggravated sexual assault, sexual assault,[10] and aggravated

---

[9] Under New Jersey law, "A person is guilty of kidnapping if
he unlawfully removes another ... a substantial distance from the
vicinity where he is found, or if he unlawfully confines another
for a substantial period, with any of the following purposes:
(1) To facilitate commission of any crime or flight thereafter,
... ."  N.J.S.A. 2C:13-1(b)(1).

[10] Under New Jersey law, "An actor is guilty of aggravated
sexual assault if he commits an act of sexual penetration with
another person under any one of the following circumstances: ...
(3) The act is committed during the commission, or attempted
commission, whether alone or with one or more other persons, of
... kidnapping... .  N.J.S.A. 2C:14-2a(3).  "An actor is guilty

criminal sexual contact[11] are not supported by sufficient
evidence.  Specifically, Petitioner alleges that the only
evidence to support the convictions is the victim's testimony,
which could have been refuted if his counsel had presented better
evidence regarding the time frame of events (e.g., the time the
victim left the club, the time it would take to travel the
distances involved, etc.) and had more vigorously cross-examined
the victim with allegedly contradictory prior statements.

The Appellate Division rejected without discussion
Petitioner's claims that his convictions for kidnapping and
aggravated sexual assault were against the weight of the
evidence.  It appears that Petitioner's claims as to his
convictions for sexual assault and aggravated criminal sexual
conduct are not exhausted.

A claim that the jury's verdict was against the weight of
the evidence raises a due process concern.  Only where, "after
viewing the evidence in the light most favorable to the
prosecution, [no] rational trier of fact could have found the

---

of sexual assault if he commits an act of sexual penetration with
another person under any one of the following circumstances:
(1) The actor uses physical force or coercion, but the victim
does not sustain severe personal injury; ... ."  N.J.S.A. 2C:14-
2c(1).

[11] Under New Jersey law, "An actor is guilty of aggravated
criminal sexual contact if he commits an act of sexual contact
with the victim under any of the circumstances set forth in
2C:14-2a(2) through (7)."  N.J.S.A. 2C:14-3a.

essential elements of the crime beyond a reasonable doubt" should the writ issue.  <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law."  <u>Jackson</u>, 443 U.S. at 324, n.16.  <u>See also</u> <u>Orban v. Vaughn</u>, 123 F.3d 727 (3d Cir. 1997), <u>cert. denied</u>, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  <u>See</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 186 (3d Cir. 2000).

Here, Petitioner does not contend that the testimony presented by the victim is not sufficient to establish any of the elements of the crimes of which he has been convicted.  Indeed, the testimony of the victim is undoubtedly sufficient to establish the elements of the crimes of conviction.  Moreover, other evidence, including the testimony of the police officers involved in the investigation, also supports the conviction.  Instead, Petitioner argues that his counsel should have presented better contrary evidence to refute the victim's testimony.  This argument does not remotely satisfy the standard for finding that the verdict is not supported by sufficient evidence.  Petitioner is not entitled to the writ with respect to this claim.

42

E.   <u>Manifestly Excessive Sentences</u>

Petitioner contends that the imposition of both maximum terms and consecutive sentences was manifestly excessive.  The Appellate Division rejected this claim on direct appeal.

> In Point III, defendant contends that the imposition of both maximum terms and consecutive sentences was manifestly excessive.  The trial judge correctly applied the statutory guidelines in imposing maximum sentences, based on aggravating factors which were amply supported by competent credible evidence in the record.  It was also appropriate to sentence defendant to prison first and then to Avenel so that the treatment occurs directly prior to release.

> Likewise, the imposition of consecutive sentences fits within the guidelines of <u>State v. Yarbough</u>, ... even though not separately stated by the trial judge. Defendant committed multiple offenses, sex-related and nonsex-related, in a single incident.  Imposition of concurrent sentences would frustrate the notion that there be no free crimes. ...

(Opinion of Appellate Division at 10-13 (citations omitted).)

A federal court's ability to review state sentences is limited to challenges based upon "proscribed federal grounds such as being cruel and unusual, racially or ethnically motivated, or enhanced by indigencies."  <u>See</u> <u>Grecco v. O'Lone</u>, 661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a challenge to a state court's discretion at sentencing is not reviewable in a federal habeas proceeding unless it violates a separate federal constitutional limitation.  <u>See</u> <u>Pringle v. Court of Common Pleas</u>, 744 F.2d 297, 300 (3d Cir. 1984).  <u>See also</u> 28 U.S.C. § 2254(a);

Estelle v. McGuire, 502 U.S. 62, 67 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990).

Here, Petitioner does not even allege that the sentence violates the Eighth Amendment or some other constitutional prohibition.  Instead, his challenges to the sentence, apart from the Blakely/Apprendi claim discussed more fully below, are based solely on alleged violations of state law.  It is well-established that the violation of a right created by state law is not cognizable as a basis for federal habeas relief.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" (quoting Lewis v. Jeffers, 497 U.S. 764, 680 (1990))).  Accordingly, Petitioner is not entitled to relief on this claim.

F.    Illegal Sentences

Petitioner asserts that his sentence was unconstitutional because it was enhanced beyond the presumptive statutory term based solely upon a judicial finding of aggravating factors. Petitioner first raised this claim in a motion to correct illegal sentence filed in the trial court in May 2005.  Petitioner's appeal of the trial court denial of his motion to correct illegal sentence remains pending before the Appellate Division. Accordingly, this claim clearly is not exhausted.  Nevertheless, it does not provide a ground for federal habeas relief.

In Apprendi v. New Jersey, 530 U.S. 466, 471, 490 (2000), pursuant to the Sixth Amendment right to trial by jury, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court overturned a sentence imposed under Washington state's sentencing system, explaining that "the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."  542 U.S. at 302 (internal quotations omitted).  Most recently, in United States v. Booker, 543 U.S. 220 (2005), the Supreme Court applied the rule of Apprendi to the United States Sentencing Guidelines, finding the Guidelines unconstitutional, and rendering them merely advisory, rather than mandatory.

Under New Jersey's Code of Criminal Justice, as in effect at the time of Petitioner's sentencing, a defendant cannot be sentenced to a period of imprisonment greater than the presumptive term for the crime he committed, unless the judge finds one or more statutory aggravating factors.  See N.J.S.A. 2C:44-1(f)(1).

45

In State v. Natale, 184 N.J. 458 (N.J. 2005), the Supreme
Court of New Jersey evaluated the constitutionality of the New
Jersey sentencing scheme in light of the Apprendi line of cases.

> Our Code provisions make clear that, before any
> judicial factfinding, the maximum sentence that can be
> imposed based on a jury verdict or guilty plea is the
> presumptive term.  Accordingly, the "statutory maximum"
> for Blakely and Booker purposes is the presumptive
> sentence.

Natale, 184 N.J. at 484.  Because the Code's system allows for
sentencing beyond the statutory maximum presumptive term, the
Supreme Court of New Jersey found the state sentencing system
unconstitutional and determined that the appropriate remedy would
be to follow the lead of Booker and abolish the presumptive
terms.  "Without presumptive terms, the 'statutory maximum'
authorized by the jury verdict or the facts admitted by a
defendant at his guilty plea is the top of the sentencing range
for the crime charged, e.g., ten years for a second-degree
offense."  Natale, 184 N.J. at 487 (citation omitted).

The Court of Appeals for the Third Circuit generally has
held that the rules announced in the Apprendi line of cases are
not applicable retroactively to cases on federal collateral
review.  See generally In re Olopade, 403 F.3d 159 (3d Cir. 2005)
(finding that the decision of the supreme Court in Booker does
not apply retroactively to cases on collateral review); United
States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 540 U.S.
977 (2003) (holding that Apprendi does not apply retroactively to

46

cases on collateral review); <u>In re Turner</u>, 267 F.3d 225 (3d Cir. 2001) (holding that <u>Apprendi</u> does not apply retroactively to cases on collateral review).  <u>See also</u> <u>United States v. Price</u>, 400 F.3d 844, 849 (10th Cir.), <u>cert. denied</u>, 126 S.Ct. 731 (2005) (<u>Blakely</u> does not apply retroactively to cases on collateral review).  Similarly, the Supreme Court of New Jersey has held that the rule it announced in <u>Natale</u> is applicable retroactively only to cases in the direct appeal pipeline as of the date of that decision.  <u>Natale</u>, 184 N.J. at 494.

Without expressing an opinion as to the proper result under state law of Petitioner's pending appeal of his motion to correct sentence, it is apparent that any <u>Apprendi</u>/<u>Blakely</u>/<u>Booker</u>-type error is not a ground for federal habeas relief.  Petitioner is not entitled to relief on this claim.

G.   <u>Denial of Motion to Expand the Record</u>

Petitioner contends that the Appellate Division violated his constitutional right to due process when it denied his motion to expand the record on appeal of the denial of his petition for post-conviction relief.

Errors in state post-conviction relief proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief.  <u>See</u>, <u>e.g.</u>, <u>Hassine v. Zimmerman</u>, 160 F.3d 941, 954 (3d Cir.1998), <u>cert. denied</u>, 526 U.S. 1065 (1999) ("The federal role in reviewing an application

for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas calculation.... Federal habeas power is 'limited ... to a determination of whether there has been an improper detention by virtue of the state court judgment."); Ferguson v. State, 1996 WL 1056727 (D.Del. 1996) and cases cited therein.  Accordingly, Petitioner is not entitled to relief based upon the denial of his motion to expand the record in the appeal of his motion for post-conviction relief.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Here, Petitioner has failed to make a substantial show of the denial of a constitutional right.  No certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

At: Camden, New Jersey                    s/Noel L. Hillman
                                          Noel L. Hillman
                                          United States District Judge

Dated: November 2, 2007

49